UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>JOEL RALPH TURNBOW, *et al.*,<br><br>Defendants. | Case No. 3:18-cr-00001-MMD-WGC<br><br>ORDER |

**I.   SUMMARY**

Joel Ralph Turnbow was charged with felon in possession of a firearm, possession with intent to distribute methamphetamine, and conspiracy to possess with intent to distribute methamphetamine—based on drugs and a gun found in a backpack in the trunk of a car he was driving when he was arrested on a misdemeanor arrest warrant, following an inventory search of the car. Following an evidentiary hearing (the "Hearing"), the Court granted Turnbow's motion to suppress the drugs and gun found in the car. (ECF No. 69 ("Suppression Order").) Before the Court is the government's motion for reconsideration of the Suppression Order (the "Motion").[1] (ECF No. 73.) Because the Court finds it applied the correct legal standard in the Suppression Order, and that neither shifting the burden as the government suggests in its Motion nor the fact that Sergeant English completed a vehicle inventory report changes the result the Court reached in the Suppression Order, the Court will deny the government's Motion.

---

[1] As the Court previously granted Method's request to join Turnbow's motion to suppress, the fruits of the inventory search were also suppressed as to her. (ECF No. 69 at 1 n.3, 15.) Defendants Turnbow and Tracy Method filed separate responses to the Motion (ECF Nos. 77, 78), and the government filed a reply (ECF No. 79). For these reasons, the Court generally refers to "Defendants" in this order, unless the context requires otherwise.

## II. BACKGROUND

The Court refers to the Suppression Order for the facts relevant to the government's Motion. (ECF No. 69 at 2-5.) As pertinent here, the Suppression Order noted that the government never proffered a Vehicle Inventory Report (the "Report") corresponding to Sergeant English's inventory search of the car at issue. (*Id.* at 4, 12.) However, as the government pointed out in its Motion, Sergeant English did prepare such a report. (ECF Nos. 73 at 2-3, 73-1 (Report).)

## III. LEGAL STANDARD

"No precise "rule" governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." *United States v. Lopez-Cruz*, 730 F.3d 803, 811 (9th Cir. 2013). "Rather, the district court's authority to revisit a ruling on a suppression motion is within its sound judicial discretion." *Id.* (internal quotation marks and citation omitted). Argument or evidence that could have been raised in connection with a motion to suppress, but was not, will not justify reconsideration. *See id.*

This Court and other courts look to the standard governing motions for reconsideration in civil cases for guidance in ruling on motions for reconsideration in criminal cases. *See, e.g.*, *United States v. Hector*, 368 F. Supp. 2d 1060, 1063 (C.D. Cal. 2005), *rev'd on other grounds*, 474 F.3d 1150 (9th Cir. 2007); *see also United States v. Ritchie*, Case No. 2:15-cr-00285-APG-PAL, 2018 WL 6579181, at *4 (D. Nev. June 20, 2018), *report and recommendation adopted*, Case No. 2:15-cr-00285-APG-PAL, 2018 WL 6580954 (D. Nev. Dec. 13, 2018).

In civil cases, a motion to reconsider must set forth "some valid reason why the court should reconsider its prior decision" and set "forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). Reconsideration is appropriate if this Court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). But "[a] motion

for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005) (citation omitted).

**IV.    DISCUSSION**

The government's arguments in its Motion do not fit neatly within the framework governing motions for reconsideration in the civil context. Regardless, the government makes two arguments as to why the Court should reconsider the Suppression Order: (A) the Court applied the wrong legal standard in the Suppression Order; and (B) the Report existed and was produced to defense counsel in discovery. (ECF No. 73 at 2.) While the Court is persuaded by neither, it addresses both below.

**A.    Applicable Legal Standard**

The government first argues that the Court applied the wrong legal standard in the Suppression Order. (ECF Nos. 73 at 2, 79 at 2.) Defendants implicitly respond that the Court applied the correct legal standard in arguing that the government bears the burden to show a warrantless search passes Fourth Amendment muster. (ECF No. 78 at 4.) The Court disagrees with the government that it applied incorrect legal standard in the Suppression Order, and reaffirms that even if the Court reexamined the Suppression Order to more clearly place the burden on Defendants to prove Sergeant English's inventory search was pretextual, the Court would not have reached a different result.

First, the Court applied the correct legal standard. Warrantless searches are "*per se* unreasonable" under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967). That means the default rule is law enforcement must get a warrant before conducting a search, unless an exception applies. Here, the government argued that the inventory search exception applied. The Court correctly stated in the Suppression Order that the "government bears the burden of showing that a warrantless search or seizure falls within an exception to the warrant requirement" (ECF No. 69 at 10 (citing *U.S. v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992)), and found that "the government has not met its burden to show that the circumstances here fall within the inventory search

exception to the warrant requirement" (*id.*). A pretextual inventory search does not fall within the inventory search exception to the warrant requirement. *See U.S. v. Johnson*, 889 F.3d 1120, 1125 (9th Cir. 2018) ("The search cannot be 'a ruse for a general rummaging in order to discover incriminating evidence.'") (citation omitted). Because the Court found in the Suppression Order that the search at issue here was pretextual, the government failed to carry its burden to show an exception to the warrant requirement applied.[2]

Second, even if the Court were to reexamine portions of its analysis to more clearly place the burden of showing the search was pretextual on Defendants, the Court would have—and does—reach the same result it reached in the Suppression Order. In this modified analysis, the Court begins with the presumption that the inventory search was not pretextual. However, this presumption is overcome by Sergeant English's testimony.

---

[2]The Court acknowledges there is some tension between the general principle that the government bears the burden to show an exception to the warrant requirement applies to a warrantless search and the Ninth Circuit's statement in *Johnson* that the Court "thus must determine whether [the defendant] has produced evidence that demonstrates the officers would not have searched and seized items from the car he was driving but for an impermissible motive." *Johnson*, 889 F.3d at 1126. But this statement does not compel a different result here. First, it is dicta. Second, the government does not offer any authority to support its contention that Defendants bear the burden of demonstrating Sergeant English would not have conducted the inventory search but for pretextual reason. (ECF No. 73 at 2.) And the Court cannot find any—other than the referenced dicta in *Johnson.* However, the Court notes that the quoted sentence in *Johnson* appears to track *United States v. Orozco,* 858 F.3d 1204, 1213 (9th Cir. 2017), which in turn tracks *United States v. Maestas,* 2 F.3d 1485, 1489 (10th Cir. 1993) ("[M]ore specifically, 'we ask whether the officer *would* have made the stop in the absence of the invalid purpose. Thus, in order to prove that a stop is unreasonably pretextual, a defendant must show that the stop would not have occurred in the absence of an impermissible reason.'") (citations omitted). In *Maestas*, which involved fixed immigration checkpoints near the U.S./Mexico border, the court held that "the defendant bears the burden of proving that a legally sufficient basis asserted as a justification for a search or seizure was pretextual." *Maestas,* 2 F.3d at 1491. But in *Maestas*, the court only reached the question of who bears the burden because the defendant did not proffer any objective evidence that the challenged stop was pretextual. *See id.* at 1492. That makes it distinguishable from this case, where Defendants have persuasively highlighted objective evidence tending to show pretext. Further, *Maestas* involved the purportedly pretextual invocation of the border checkpoint stop exception to the warrant requirement, not the inventory search exception at issue here. *See generally id.*

4

Specifically, there is a line running through Sergeant English's testimony indicating he was suspicious Defendants were engaged in drug-related activity from the moment he saw them, and thus the inventory search was a pretext to look for drugs. His initial interest was sparked by the fact that Turnbow was driving a Honda, and Method made eye contact with him and then looked away. (ECF No. 76 at 30-31.) He requested a K-9 unit because he thought Method was trying to conceal something as he pulled them over. (*Id.* at 85.) The K-9 unit's dog ran around and inside the car before Sergeant English began the inventory search, but did not alert. (*Id.* at 43, 98.) Further, Sergeant English testified at the Hearing that he called a K-9 unit in an attempt to establish probable cause to search the car more extensively than he could have pursuant to an inventory search. (*Id.* at 43-45.) This evidence, along with other evidence discussed both in the Suppression Order and below, tends to show the inventory search was pretextual, even if the Court begins from the presumption it was not. Thus, the Court is not persuaded by this argument and declines to reconsider the Suppression Order on this basis.

### B. The Vehicle Inventory Report

The government also argues the Court should reconsider its analysis in the Suppression Order because Sergeant English did complete the Report. (ECF Nos. 73 at 2, 79 at 2-3.) If the Court had known the Report existed, the government argues, the Court would have denied Turnbow's motion to suppress. (ECF No. 73 at 2-3.) Defendants counter that the absence of the Report was just one circumstance that the Court considered amongst the totality of the circumstances, and having the Report in evidence would not have changed the Court's decision as reflected in the Suppression Order. (ECF No. 78 at 4.) Defendants further argue that the Court never said the Report was never written in the Suppression Order, but instead merely noted the government had not proffered it to the Court, which raised the possibility it was not written. (*Id.* at 2.)

The Court had incorrectly assumed that the Report was not prepared, but finds this fact does not change its ultimate decision to grant Turnbow's motion to suppress as

reflected in the Suppression Order.³ A number of other circumstances supported the Court's finding that Sergeant English's inventory search of the car was a pretext to allow him to search for evidence of Defendants' suspected drug-related activity. For example, the Court noted in the Suppression Order that the government conceded at the Hearing that Sergeant English had at least a dual purpose in conducting the inventory search. (ECF No. 69 at 10.) Sergeant English continued to note Turnbow and Method's allegedly suspicious behavior throughout his interactions with them, and in his police report. (ECF No. 69 at 11-12.) Sergeant English also undermined his claim that the inventory search served community caretaking purposes both in his testimony at the Hearing and by not including any details relevant to his purported community caretaking purpose in his police report. (*Id.* at 13-14.) Further, Sergeant English did not exercise his discretion to leave the car with Method instead of impounding it, even though doing so would have mitigated his stated community caretaking concerns. (*Id.* at 12-13.)

Notably, Sergeant English called for a K-9 unit who conducted a dog sniff of the car before he initiated the inventory search—which is not normally part of an inventory search. (*Id.* at 11.) Most notably, Sergeant English testified at the hearing that he called for a K-9 unit because he wanted to establish probable cause to search for drugs in the car, which would have allowed him to search the car more extensively than he would have been able to pursuant to the inventory search. (*Id.* at 11.) Thus, even with any reference to the apparently missing Report removed, the Court would have reached the

---

³As part of its burden to show the inventory search exception applies, the government also bears the burden to show that the inventory search complied with the applicable policy. *See United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016) (stating that police may rely on the inventory search exception "so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic.") To comply with Sparks Police Department's policy, Sergeant English was required to prepare a Vehicle Inventory Report. (ECF No. 50-3 at 4.) Thus, the government should have proffered the Report to the Court to show Sergeant English complied with the policy as part of meeting its burden to show that the inventory search exception applied here, but did not.

same decision—the inventory search was pretextual—that it reached in the Suppression Order.

Further, like in *Johnson*, the Court weighted Sergeant English's testimony at the Hearing, including about why he called for a K-9 unit, more heavily than the absence of the Report in the Suppression Order—and stands by that weighing of the evidence today. (ECF No. 69 at 11-14.) *See also Johnson*, 889 F.3d at 1127 (noting that defendant argued police did not comply with their inventory policy, but stating the Ninth Circuit did not need to consider that evidence "because the officers themselves explicitly admitted that they seized items from the car in an effort to search for evidence of criminal activity.") Thus, the evidence the Court found more persuasive in determining that the inventory search was pretextual was evidence the Court properly should have, and did, weigh more heavily in its analysis than the presumed absence of the Report. The absence of the Report was not a key piece of evidence in terms of its influence on Court's decision in the Suppression Order. It was a supporting piece of evidence.

That said, the Court should not have permitted Method's counsel to raise the absence of the Report for the first time in her closing argument at the Hearing[4]—after the witnesses had been dismissed—particularly now with the benefit of hindsight that the Report had been produced in discovery. (ECF Nos. 73 at 2-3 (stating the Report had been produced in discovery), 76 at 124 ("There was no testimony here today that there were any inventory tow sheets that was completed."), 78 at 2 (conceding the Report was produced in discovery).) While Method's counsel's statement was not technically incorrect and apparently intentionally phrased (ECF No. 77 at 3 (stating that "Defense did, carefully, argue in closing that the Government had not provided the Court any testimony that an

---

[4]The government contends that the Court "repeatedly noted that no vehicle inventory report had been introduced into the record at the hearing" even though Turnbow "made no such argument." (ECF No. 73 at 2.) But at the Hearing, Method's counsel did "carefully" point out—as part of her argument that the inventory search was pretextual—the absence of testimony relating to "any inventory tow sheets that was completed." (ECF No. 76 at 124.)

7

inventory tow sheet was completed")), her statement suggested the absence of the Report, causing the Court to look back through all of the evidence that had been submitted in connection with Turnbow's motion to suppress, and conclude that the Report had not been proffered to the Court. Method's counsel's argument also suggested the Report's absence was material. The Court was persuaded, and mentioned the Report's absence in the Suppression Order. But apparently Method's counsel either knew or should have known that the Report did exist because it had been produced in discovery.[5]

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the government's Motion.

It is therefore ordered that the government's motion for reconsideration (ECF No. 73) is denied.

DATED this 19th day of March 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[5]Defendants' counsel separately, alternatively argue in response to the government's Motion that the government could not have offered the Report at the evidentiary hearing because the government did not subpoena the officer who completed the Report, or otherwise did not have a witness who could establish proper foundation for the Report. (ECF No. 77 at 3; ECF No. 78 at 3.) To be fair, Defendants did not raise the issue of the Report in their briefing on the motion to suppress, and the Court would either have allowed the government to offer the Report, or not relied on the absence of the Report in its Suppression Order, had this issue not been so unnecessarily obfuscated.